Below is an Opinion of the Court.

_____
ELIZABETH PERRIS
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | Bankruptcy Case |
| DOUGLAS MARIO THORUD, ) | No. 09-66464-elp13 |
| Debtor. ) | |
| MICHELLE THORUD, ) | Adversary Proceeding |
| Plaintiff, ) | No. 10-6107-elp |
| v. ) | |
| DOUGLAS MARIO THORUD, ) | MEMORANDUM OPINION |
| Defendant. ) | |

Debtor/Defendant Douglas Thorud (Douglas)[1] filed a Chapter 13 petition (Case # 09-66464-elp13) on November 25, 2009. He is currently operating under a plan dated November 25, 2009, which was confirmed on May 27, 2011. Douglas's ex-wife Michelle Thorud (Michelle) filed this adversary proceeding seeking a declaration that an obligation pursuant to a stipulated divorce judgment is excepted from discharge under 11 U.S.C. § 523(a)(5).[2]

---

[1] For the sake of clarity the parties are referred to by their first names because they have the same surname.

[2] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code. In the pre-trial order, Michelle withdrew an additional claim under § 523(a)(2)(A).

MEMORANDUM OPINION-1

I.      Factual Background

Douglas and Michelle began living together in 1993. Their first son was born in 1995. They were married August 31, 1996. Their second son was born in 1997. They separated on or about February 16, 2007. On August 2, 2007, Douglas filed a petition for divorce in Polk County Circuit Court. Michelle answered, requesting child and spousal support among other relief. Douglas replied, denying that spousal support would be appropriate. Douglas was represented in the divorce proceedings by John Case (Case), and Michelle by Sarah Bostwick (Bostwick).

Eventually a "Stipulated General Judgment (Dissolution of Marriage with Money Award and Child Support Award)" was entered July 25, 2008 (the Stipulated Judgment). Michelle was awarded custody of the children and child support of $650 per month, which was non-modifiable for 24 months. Each party was to pay one-half of various other expenses related to the children and to maintain life insurance for the benefit of the children. Douglas was also to maintain health and dental insurance for the children.

Michelle was awarded, as her sole property, a residence located on Reed Lane, in Dallas, Oregon, where she lives with her children and mother. Michelle was the sole titleholder of this property. She testified that it had been purchased with funds from the sale of her mother's former residence. In the property division negotiations, Douglas agreed to make no claim on any equity in the Reed Lane property.

The Stipulated Judgment also awarded a $125,000 judgment to Michelle, which is the subject of the instant dispute. The judgment was denominated "property division" and was to be paid from the sale of two other residences: one on Kings Valley Highway in Dallas, Oregon (the Kings Valley property) and one on Reed Market Road in Bend, Oregon (the Bend property). The parties were awarded these two properties as co-tenants. Douglas was given the exclusive right to use and occupy the Kings Valley property and was responsible for paying the upkeep thereon. Douglas was also responsible for paying the mortgages against both properties. The Bend property was to be sold only if the proceeds from the Kings Valley property were insufficient to pay the $125,000 award. If Michelle was paid in full from the sale of the Kings Valley property, the Bend property would become Douglas's alone. The $125,000 judgment would survive to the extent sales proceeds from both properties were insufficient to pay it.

MEMORANDUM OPINION-2

During the course of the divorce proceedings no order, temporary or otherwise, was entered requiring Douglas to pay spousal support and, in fact, during this time he paid none. Further, the Stipulated Judgment did not expressly provide for spousal support. Rather, and consistent with its eventual label, the negotiations between counsel repeatedly reiterated that Michelle's monetary award was to be part of the parties' property division.[3] During the negotiations, the parties presented a series of spreadsheets with proposed allocations of debt and property. Plaintiff's Trial Ex. 6. In each party's bottom line, Michelle's proposed monetary award exactly equalized the proposed property distribution between them. Michelle's eventual monetary award was a product of these computations.

As noted, it was contemplated that the monetary award would be paid from the proceeds of the Kings Valley property. In this regard, the Stipulated Judgment provided that the Kings Valley property would be considered both Michelle's and Douglas's primary residence and that "[e]ach party shall report one-half of the sale proceeds on their separately filed federal and state income tax returns . . . ." Plaintiff's Trial Ex. 4; Stipulated Judgment at § 7.9. During negotiations, Bostwick explained that, although she did not believe either party would have capital gains tax associated with the sale, because it was contemplated that Douglas would upgrade the property with the intention of receiving additional funds, "it seems fair for each of them to report one-half of the sales proceeds which should eliminate any potential capital gains liability for either one of them." Defendant's Trial Ex. C; February 26, 2008, letter to Case.

The Stipulated Judgment also provided that its terms were binding on the parties' "heirs" and "successors," and that "[e]ither party, their heirs or assigns shall have the right . . . to sue for damages for b[r]each of the agreement represented in this stipulated judgment, or to seek such other legal and equitable remedies as may be available." Plaintiff's Trial Ex. 4; Stipulated Judgment at 4:5-7 and 4:11-14.

---

[3] In a February 1, 2008, e-mail settlement offer, Case indicated that the contemplated monetary judgment would be based on "assets and debts divided per spreadsheet previously exchanged" and that the Stipulated Judgment would have "[n]o spousal support." Defendant's Trial Ex. A. Bostwick replied in a February 6, 2008, e-mail, referring to Michelle's contemplated monetary award as "the property division," and confirming "[t]here would be no spousal support." Defendant's Trial Ex. B. Later correspondence from Bostwick again referred to Michelle's contemplated monetary award as "her property judgment" and "Wife's property division judgment." Defendant's Trial Ex. C; Feb. 26, 2008, letter to Case.

MEMORANDUM OPINION-3

1  Neither the Kings Valley nor the Bend property sold. Both properties were subsequently foreclosed upon. Michelle has not been paid any portion of the $125,000 judgment.[4]

II.  Discussion

As framed by the parties, the only issue is whether the $125,000 judgment qualifies as a "domestic support obligation" (DSO). If so, it is both excepted from discharge under § 523(a)(5) and entitled to priority status under § 507(a)(1)(A). A DSO is defined in relevant part as a debt owed to a spouse or former spouse that is "in the nature of alimony, maintenance, or support . . . without regard to whether such debt is expressly so designated." § 101(14A). Whether an obligation is in the nature of support and thus qualifies as support under bankruptcy law is a question of federal law. Friedkin v. Sternberg (In re Sternberg), 85 F.3d 1400, 1405 (9th Cir. 1996), overruled on other grounds, Murray v. Bammer (In re Bammer), 131 F.3d 788 (9th Cir. 1997). In determining whether an obligation is a DSO, the court looks to the interpretation of DSO discussed in cases relating to the dischargeability of support under former § 523(a)(5). In re Nelson, 451 B.R. 918, 921 (Bankr. D. Or. 2011).

Determining whether an obligation is in the nature of support requires "the court [to] look beyond the language of the decree to the intent of the parties and to the substance of the obligation." Shaver v. Shaver, 736 F.2d 1314, 1316 (9th Cir. 1984). When the obligation is created by a stipulated dissolution judgment, as here, "the intent of the parties at the time the settlement agreement is executed is dispositive." Sternberg, 85 F.3d at 1405. Factors to be considered in determining the parties' intent include "whether the recipient spouse actually needed spousal support at the time of the divorce[,]" which requires looking at whether there was an "imbalance in the relative income of the parties" at that time. Id. (internal quotation omitted). Other considerations are whether the obligation terminates on the death or remarriage of the recipient spouse, and whether payments are made directly to the spouse in installments over a substantial period of time. Id.;

---

[4] Based on the Stipulated Judgment and interest accrued thereon, Michelle filed proof of claim #13-1 for $130,363, classifying $53,774 as secured and $76,589 as general unsecured. On August 9, 2011, she amended her claim (proof of claim #13-2), re-classifying it all as priority unsecured under § 507(a)(1)(A). Douglas objected, recommending allowance as a general unsecured claim. The objection is now pending. The parties agree that resolution of the adversary proceeding will also resolve the objection to claim.

MEMORANDUM OPINION-4

Shaver, 736 F.2d at 1316–17. The labels the parties used for the payments may also provide evidence of their intent. Sternberg, 85 F.3d at 1405. The presence of minor children is a factor, Shaver, 736 F.2d at 1316, as is how the parties treated the claim/debt for tax purposes. Kritt v. Kritt (In re Kritt), 190 B.R. 382, 388 (9th Cir. BAP 1995).[5] State law may be used as a guide, Beaupied v. Chang (In re Chang), 163 F.3d 1138, 1140 (9th Cir. 1998), or, in the case of an agreed obligation, as helpful context in understanding the agreement. Catron v. Catron (In re Catron), 164 B.R. 912, 916 (E.D. Va. 1994). The marital claimant has the burden of proving by a preponderance of the evidence that the obligation is in the nature of support. Albaugh v. Barnard (In re Barnard), 349 B.R. 238, 242 (Bankr. D. Idaho 2006).

As Sternberg instructs, the Court's mission is to determine the parties' mutual intent. Both Michelle and Douglas testified at trial and, not surprisingly, each professed an intent that contradicted the other's. Thus, the parties' testimony does not aid the court.

For the reasons explained below, the parties' negotiations and the Stipulated Judgment's terms convince the Court that Michelle failed to carry her burden of proving that the parties intended the $125,000 judgment to be in the nature of support.

The label "property division" assigned to the $125,000 judgment, and conversely the lack of any mention of "spousal support" in the Stipulated Judgment are, given the circumstances, strongly probative of the parties' intent. This intent is also borne out by other circumstances surrounding the Stipulated Judgment. First, both parties were represented by counsel in negotiating the Stipulated Judgment and indeed it was Michelle's counsel who first used the term "property division." Second, during negotiations both counsel repeatedly stated that there was to be no spousal support, and Michelle's monetary award would be a "property division."[6] Third, the spreadsheets (upon which the ultimate award was based) uniformly came to

---

[5] However, tax treatment may not be used to estop a party from arguing that the claim/debt should be recognized differently in § 523(a)(5) or § 507(a)(1) litigation. Kritt, 190 B.R. at 388.

[6] Another example is Bostwick's February 26, 2008, letter to Case detailing some of the Stipulated Judgment's (almost) final terms. It concludes by observing that "[o]bviously most of the changes requested in this judgment revolve around protecting Michelle's interest in this [the Kings Valley] real property until Doug is able to pay her the
(continued...)

MEMORANDUM OPINION-5

a 50/50 bottom line between the parties, strongly indicating that a property division was intended. Fourth, the Stipulated Judgment recognized the Kings Valley property as each party's primary residence, with each to report one-half the proceeds as income. These terms were intended to avoid capital gains tax, further evidencing an intent to treat the $125,000 award as property settlement, rather than income to Michelle and expense to Douglas, as support would be treated. Fifth, the $125,000 award is in lump sum rather than installments and its enforcement survives both Michelle's and Douglas's death. These are attributes indicating property settlement rather than support.

Looking at the Oregon standards for spousal support as context, the parties in their negotiations as to the $125,000 award took few of the enumerated factors into account. In connection with the award there was no mention of the parties' ages, duration of marriage, health, standard of living, relative earning capacity, training and employment skills, work experience, custodial and child support responsibilities, or the amount, duration and nature of either party's contribution to the education, training, vocational skills, career or earning capacity of the other. See ORS 107.105(1)(d)(A)(i)-(iii), (vi), (B)(i)-(iii), (C)(i)-(vii), (x). One factor, the "[t]ax consequence to each party," ORS 107.105(1)(d)(A)(v), (B)(v), (C)(ix), was expressly discussed, but as noted above, that factor cuts against a finding of support. Another factor, the parties' financial needs and resources, see ORS 107.105(1)(d)(A)(iv), (C)(viii), was arguably impliedly introduced into the discussions by Michelle's February 6, 2008, request for $30,000 of the award up front. Douglas rejected the proposal, Defendant's Trial Ex. B, and ultimately no "up-front" money was required. The Court thus draws no inferences, positive or negative, from Michelle's initial proposal.

Michelle points to her custody award and the parties' disparity in income as evidence that the $125,000 judgment is support. While a custody award can be a favorable "support" factor, the Stipulated Judgment's comprehensive provisions dealing with child support reduce any inference the $125,000 judgment was in the nature of support.

---

[6](...continued)
$120,000." Defendant's Trial Ex. C (emphasis added). Subsequent negotiations increased the judgment amount to $125,000.

MEMORANDUM OPINION-6

As to the parties' relative incomes, when the Stipulated Judgment was being negotiated in late 2007 and early 2008, Michelle was a representative for Arbonne International, a health and beauty products company, focusing on in-home sales. She was paid on a commission basis both from her sales and the sales of others she brought into the business. She had risen high enough in the organization to be entitled to reimbursement of part or all of her monthly debt service on a late-model white Mercedes, which, as the Court understands, was Arbonne's version of a "company car." Douglas had a career in retail jewelry as a store manager, but at times was unemployed when the Stipulated Judgment was being negotiated. At the time the Stipulated Judgment was in fact entered, he had changed careers and started his own construction company.

For purposes of setting child support, the Stipulated Judgment forecast Douglas's income at $7,150 per month and Michelle's at $2,000 per month. Douglas's projected income was consistent with his historic income. Michelle's expenses were estimated at $5,721 per month per the Uniform Support Affidavit she filed at the outset of the divorce proceeding. Of that, $1,412 represented the mortgage on the Reed Lane property. Michelle testified that she intended to apply the $125,000 to pay down the mortgage. No monthly expense figures for Douglas at the time of the divorce proceedings were adduced.

At first glance, it appears that Douglas's gross income was more than 3 times that of Michelle. However, the disparity in fact may not have been that great. From the correspondence between counsel during negotiations, it appears that Douglas's forecasted income was worked backwards from the agreed-upon $650 per month child support.[7]

In the end, it is clear that both Michelle and Douglas expected to obtain value from the Kings Valley and Bend properties. Unfortunately, however, when the Stipulated Judgment was entered and during the

---

[7]A February 6, 2008, e-mail from Bostwick detailing the future stipulation's terms stated:

> Child support would be set at $650 a month for 24 months. Since Doug is presently unemployed, we would need to make appropriate findings so that that stipulation is clear that he has agreed to $650 a month regardless of his monthly income.

Defendant's Trial Ex. B.

MEMORANDUM OPINION-7

subsequent contemplated sale period, the real estate market was in the middle of collapse. What looked like equity (a division of which was negotiated in good faith) possibly disappeared when the real estate bubble burst. The evidence of the disparity in the parties' incomes and Michelle's custody of the children is insufficient to outweigh the strong evidence that the $125,000 award was part of the property division.

In coming to its findings and ultimate conclusion that the $125,000 judgment is dischargeable, the Court is not unmindful of the hardship its ruling may cause Michelle should Douglas complete his Chapter 13 plan and obtain a discharge. Such, however, is the nature and consequence of a debtor's fresh start. While Congress could have further limited Chapter 13's super-discharge to exclude non-support divorce obligations (as it has in Chapter 7),[8] it has declined to do so. It is not for the Court to intervene in that policy choice.

III. Conclusion

Judgment will be entered in Douglas's favor declaring the $125,000 judgment contained in the Stipulated Judgment to be a dischargeable debt. This also resolves Douglas's pending objection to Michelle's priority claim. The objection will be sustained and proof of claim #13-2 will be allowed in the filed amount as a general unsecured claim. Douglas's counsel is directed to prepare and present an appropriate judgment in this proceeding and a claims order in the main case within 14 days of this Opinion's entry.

The above constitute the Court's findings of fact and conclusions of law under FRBP 7052. They shall not be separately stated.

###

---

[8] Compare § 1328(a), with §§ 523(a)(15) and 727(b).

MEMORANDUM OPINION-8